**SHARTS v WARNER, etc, et**

Common Pleas Court, Montgomery Co.

Decided September 9, 1935

Joseph W. Sharts, Dayton, for plaintiff in error.

Herbert Mills, Dayton, for the Attorney General of Ohio.

**OPINION**

By SNEDIKER, J.

The plaintiff brings this action for a decree of the court requiring the superintendent of building and loan associations to recognize a claim which she has presented to him in the liquidation of. the Miami Savings & Loan Company as a deposit and as preferred over stockholders of that company, and for equitable relief generally.

The superintendent has filed an answer in which he denies generally the allegations of the plaintiff's petition; insists that she is and always has been a stockholder in the Miami Savings & Loan Company; and admits only the presentation of the claim by the plaintiff and its rejection by him.

The case was heard on the merits. The evidence shows that the plaintiff's first connection with the defendant savings and loan company began on November 25, 1927 when she made a deposit of $500.00 and received a deposit book for that amount. At the same time or shortly thereafter by the signature of herself and her husband this deposit was made a joint account. On the same day, at the same time and in the same way, Maud E. Shirar made a deposit and the testimony shows that the book which Mrs. Sharts received as evidence of her deposit has since been surrendered to the savings association or is lost but that it was the same as the book handed to Maud E. Shirar. And that, being in evidence, shows that $500.00 put in the association by the plaintiff was in fact a deposit. A photostat of the ledger account, the number of which was originally 34150, also shows the same fact, and shows that subsequently, up to and including February 6, 1930, deposit credits were entered on the ledger No. 34150. The evidence also discloses Mrs. Sharts testifying (Transcript, page 34):

"Q. Do you have any recollection of what you wanted and what you asked for when you went there originally?

"A. I went to the window at the left, the last one, where Mr. Rosenbush was teller later when the Miami was still in business, but who the man was at that time—I· had never been in the Miami before; we had deposits in the Franklin and the Mutual.

"By Mr. Sharts: Q. Never mind—

"A. And I decided we would open one. Mr. Sharts—I asked him if it was all right and he said yes.

"Q. Never mind that. ·

"A. We went to the Miami and went to this window and I said I wanted to

open a savings account. I signed this card and had the small book that I had originally that I didn't—that I haven't now, didn't get back when I got this later. And I identify that book, but it is my recollection that I opened it with a check of $350—three thundred or three hundred and fifty.

"Q. Plaintiff's Exhibit A indicates a deposit of $500.00 on November 25, 1927.

"A. Well, that was it then."

On May 27, 1930, plaintiff's account No. 34150, which then amounted to $4,079.40, was changed to account No. 22790, which latter was a stock account. This was done without the knowledge or consent or acquiescence of the plaintiff. Thereafter dividends were declared and allotted to this account. It was about this date that the officers of the Miami Savings & Loan Company had a field day on which they transferred many hundreds of thousands of dollars from deposits to running stock accounts, and when this was done prepared new books for the stock accounts and took up the old deposit books containing the original accounts. This was done with plaintiff's account and on June 30, 1930 she was handed a new passbook showing a balance of $4,199.72, which represented the balance on her old deposit account together with the dividend of $120.32 which had been declared before the new book was given her. This new book on its back bore the legend "Savings Account," which was a misnomer so far as Account 22790 is concerned and which it represents.

After that, her husband having died and the plaintiff desiring to change her account into her individual name, informed the association of her desire, turned in her passbook, and her account was given a new number, 22772. The balance on that date was $4,199.72. And from that time the account was in her own name. Her passbook representing Account No. 22790 was taken up and her present passbook, 22772, was given her. which set up a stock account and on its back indicated in large letters a savings account. Withdrawals

have been made by the plaintiff on this account. Her check of February 6, 1930 indicates how her account was regarded by her. It contains the inscription "Dep," which must have been there at the time she wrote her check, for the performation cuts the letters. This, she says, was her habit in drawing checks of this kind so as to definitely indicate on what it was drawn.

Certain receipts signed by the plaintiff and produced by the defendant show: July 21, 1932, the letters "Rs," said by the defendant's witnesses to mean running stock; August 26, 1932, in larger letters, "My running stock Account No. 22772"; October 6, 1932, "The above amount which has been charged to my account No. 22772"; November 28, 1932, "The above amount which has been charged to my running stock account No. 22772".

In contradiction of the language of these receipts—and, as we understand the law, a receipt is always open to contradiction—the plaintiff testified that each of them was handed to her for signature in a perfunctory way and that she made the signature without particular examination and did not understand or know that she was receipting for payment on a running stock account but always thought that her account was a deposit account. She therefore asks that it be recognized as such by the superintendent.

This court has heretofore passed on the effect of the transaction in which so many accounts were transferred from deposits to stock ██ without the knowledge of the depositor and we have designated the change as being void and unenforceable and a fraud on the depositor. The fraud so perpetrated vitiates the act and all subsequent acts done in pursuance thereof. Our opinion is still the same. The contract relations existing at that time between the building association and its depositors could not be then and there changed without the acquiescence and consent of the depositor in each of the changes. We do not find anything in this record which we can say distinctly brought

home to the plaintiff the fact that she had been thus imposed upon. The receipts having been explained as not intended by her to carry any such weight, we are unable to recall any other evidence of knowledge on her part or acts on her part which would bind her thereto.

We are of the opinion, therefore, that her account is and should be recognized as a deposit account and that she ought to take that place in the distribution of the assets of the defendant savings and loan company by the superintendent. An entry may be drawn accordingly.